UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

P PARK MANAGEMENT, LLC,

                      Plaintiff,

            v.

PAISLEY PARK FACILITY, LLC and
COMERICA BANK AND TRUST, N.A.,
as Personal Representative of the Estate
of Prince Rogers Nelson,

                      Defendants.

Court File No. 21-CV-02128


**COMPLAINT**

[DEMAND FOR JURY TRIAL]

---

Plaintiff P Park Management, LLC ("P Park"), by its undersigned attorneys, for

their claims against Paisley Park Facility, LLC ("PP Facility") and Comerica Bank and

Trust ("Comerica"), N.A., as personal representative of the Estate of Prince Rogers

Nelson (the "Estate"), allege as follows:

1.      Plaintiff P Park is a limited liability company formed on August 22, 2016

under the laws of the state of Delaware. P Park's sole member is Draw a Circle, LLC, a

Delaware limited liability company. Draw a Circle, LLC's sole member is Joel

Weinshanker. Joel Weinshanker is a resident of the state of Nevada. Thus, for the

purposes of diversity jurisdiction, Plaintiff P Park is a resident of the state of Nevada.

2.      Defendant Comerica is the court-appointed Personal Representative of the

Estate. Comerica is a national banking association with its headquarters in Ann Arbor,

Michigan. Prince was domiciled in Minnesota and the Estate administration is in

Minnesota. Pursuant to 28 U.S.C. § 1332(c)(2), Comerica is a citizen of Minnesota for the purposes of diversity jurisdiction.

3.      Defendant PP Facility is a limited liability company formed on under the laws of the state of Delaware and with a registered office address of 1010 Dale Str. N., St. Paul, MN 55117-5603 and a principal place of business address of 3551 Hamlin Rd., Auburn Hills, MI 48326. Upon information and belief, Defendant Comerica is the sole member of PP Facility. PP Facility is therefore a resident of the state of Minnesota.

4.      The Court has personal jurisdiction over Defendant Comerica because it has transacted business within Minnesota and committed acts in Minnesota causing injury in Minnesota and because Comerica has further consented to jurisdiction pursuant to Minn. Stat. § 524.3-602.

5.      The Court has personal jurisdiction over Defendant PP Facility because it has transacted business within Minnesota and committed acts in Minnesota causing injury in Minnesota.

6.      Diversity jurisdiction is proper under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

7.      Venue is proper in this District under 28 U.S.C. § 1391 (b)(1) and (b)(2) because both Defendants reside in this district and because a substantial part of the events or omissions giving rise to the claim occurred in this District.

8.      From August 2016 to September 2019, P Park served as the operator of Paisley Park, a museum located in Chanhassen, Minnesota, as well as related exhibitions (the "Venue").

9.      P Park performed its duties pursuant to an Exhibition Operating Agreement (the "Venue Agreement") executed by Defendant PP Facility, an entity formed and controlled by the Estate of Prince Rogers Nelson.

10.      The Venue Agreement was initially administered on behalf of PP Facility and the Estate by the Estate's then representative, Bremer Trust. In 2017, the Bremer Trust was replaced as personal representative by Comerica.

11.      Getting the Venue ready to open took considerable efforts and resources on the part of P Park, in coordination with Bremer and local authorities, including numerous meetings with the Chanhassen mayor, city council, and zoning authorities. The Venue opened on October 26, 2016.

12.      From August 2016 to September 2019, P Park cooperated with first Bremer and then Comerica, in a consistent effort to maximize the opportunity at Paisley Park and realize the greatest revenue potential for the PP Facility and the Estate.

13.      However, beginning in 2017, Comerica took actions to sabotage P Park's performance of the Agreement, with the goal of driving P Park out of its position as the Venue's operator.

14.      In May 2019, Comerica sent P Park a notice of intent to terminate the Venue Agreement. P Park disputed the validity of the termination and that dispute was referred to mediation.

15.      Following the mediation, P Park and Comerica (acting on behalf of PP Facility and the Estate) reached a settlement that was memorialized in a written term sheet (the "Term Sheet"). The Term Sheet provided, among other things, that P Park

would continue to operate the Venue until October 1, 2019, at which point PP Facility would assume its operation.

16.     The Term Sheet also provided that the parties would enter into a formal and final settlement agreement consistent with the Term Sheet.

17.     On or about November 22, 2019, Madison Dube ("Dube") filed a lawsuit in the U.S. District Court for the District of Minnesota, asserting claims against PP Facility, Comerica and P Park, among other parties (the "Dube Litigation").

18.     Dube's claims related to the use of certain photographs in connection with P Park's operation of the Venue. P Park had sought and obtained authorization from the Estate and PP Facility before it made use of the photos in connection with the Agreement. P Park would not have used the photos absent Defendants' assurance they owned or controlled the rights for their use and duplication.

19.     P Park only made use of photos authorized by the Defendants. P Park made use of the photos in furtherance of its responsibilities under the Venue Agreement and for the purpose of conferring benefits on the Defendants.

20.     On December 10, 2019, P Park's outside counsel contacted Comerica's counsel to express the position that that because the Dube photographs had been approved by the Estate for publication by P Park (principally through Bremer Trust, the prior agent for the Estate), PP Facility and the Estate had a duty to indemnify and defend P Park on the Dube claim. Comerica's counsel responded that PP Facility and Comerica would stand by approvals that had been provided by Bremer as agent for the Estate ("we will stand in their shoes").

21.     On December 12, 2019, P Park's counsel emailed Comerica's counsel the evidence of the Estate's approval of the use of Dube photographs. In a follow-up phone call, Comerica's counsel stated that the Defendants would agree to defend P Park in the Dube Litigation, conditioned on PP Facility and P Park signing their final settlement Agreement.

22.      With respect to an ultimate indemnity obligation for damages payable to plaintiff Dube, assuming any existed, Comerica's counsel proposed that the parties wait for the resolution of the case, expressing her belief that the case would likely resolve in the Estate's favor or be settled on terms that might render the issue moot.

23.     It was in Comerica and PP Facility's interest to agree to defend P Park, because of the benefits of maintaining alignment in defending the Dube Litigation. Comerica and PP Facility also knew that P Park had maintained many of the documents likely to be sought in discovery and thus would benefit from P Park's cooperation to make the Dube Litigation go smoothly for their side.

24.     Comerica's counsel acknowledged the Estate's undertaking to defend P Park in writing on multiple occasions. In an email dated January 10, 2020, she referred to "Comerica's agreement to provide a defense to P Park in the Dube matter . . . conditioned on a final settlement agreement having been executed." This acknowledgement also was contained in a second email dated January 27, 2020.

25.     However, that January 27, 2020 email also referred to another dispute that had subsequently arisen between the parties over ticket revenues.  For the first time, the

January 27 email seemed to link the revenue-sharing dispute to the Dube indemnity, even though the two issues were entirely distinct.

26.     Because the Defendants used the pending revenue sharing dispute as an excuse to delay their obligation to defend P Park in the Dube Litigation, P Park was forced to retain outside counsel to answer the Dube complaint and otherwise represent P Park in the Dube Litigation without receiving the promised reimbursement from the Defendants.

27.     The ticket revenue dispute was resolved in P Park's favor. However, the Defendants, displeased by the result, proceeded to renege on their prior commitment to defend P Park in the Dube action.

28.     Specifically, after that resolution of the ticket revenue dispute, the Defendants pressed P Park to execute the final settlement agreement called for in the Term Sheet. However, when P Park edited the draft final settlement agreement to reflect the Defendants' agreement to defend P Park in the Dube matter, they refused to agree to the edits, thereby reneging on their promise to defend P Park.

29.     No explanation was given for this sudden 180-degree change in position. However, the timing and context makes it clear the change in position was retaliation against P Park for refusing to agree with the Defendants in the unrelated ticket revenue dispute.

30.     Notwithstanding the Defendants' repudiation of their obligation to defend P Park in the Dube Litigation, P Park continued to negotiate the terms of a settlement agreement and the settlement was signed by both sides in May 2020. The settlement

agreement left open the question of Defendants' obligation of defend P Park in the Dube litigation.

31.     However, even after the settlement was signed, the Defendants still did not honor their obligation to defend P Park in the Dube Litigation.

32.     Even though P Park had ceased operating the Venue and was not the true party in interest in the Dube case, it still retained physical custody and access to documentation sought by Dube in the litigation. Accordingly, P Park absorbed an extremely disproportionate share of the costs of document production in the Dube case, to the benefit of the Defendants, the responsible parties and the true parties in interest.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

33.     P Park repeats and realleges the allegations above as if fully set forth herein.

34.     Comerica and PP Facility formed a contract with P Park to provide a defense to P Park in *Dube v. NPG Music Publishing, LLC*, Case No. 19-cv-2968 (D. Minn. filed November 22, 2019).

35.     To the extent the Defendants conditioned their performance on P Park's execution of a final settlement agreement of an earlier dispute, they improperly acted to render performance of that condition impossible without frustrating the purpose of the contract, by refusing to acknowledge their promise to defend P Park.

-7-

36.     Their refusal of the Defendants to include their obligation to defend P Park in the proposed final settlement agreement constituted a repudiation of the agreement to provide a defense to P Park in the Dube Litigation.

37.     Notwithstanding Defendants' efforts to hinder and frustrate P Park's execution of the final settlement agreement, the agreement was finalized and signed by both parties. The final settlement agreement left open the question of Defendants' obligation of defend P Park in the Dube litigation.

38.     P Park also performed on the contract by cooperating with the Defendants in the Dube Litigation, including carrying much of the burden of producing documents.

39.     Defendants breached the contract by refusing to provide P Park the promised defense to the Dube litigation.

40.     As a result, P Park incurred attorneys' fees and costs in excess of $75,000.

41.     As a result of Defendants' failure to defend P Park, P Park has been sued for nonpayment of fees by its counsel in the Dube Litigation, and is now incurring additional attorneys' fees and costs defending that litigation.

## SECOND CAUSE OF ACTION
### (Indemnity)

42.     P Park repeats and realleges the allegations above as if fully set forth herein.

43.     P Park was named as a defendant in *Dube v. NPG Music Publishing, LLC*, Case No. 19-cv-2968 (D. Minn. filed November 22, 2019), based solely on action taken at the direction, in the interest of, and in reliance upon Defendants.

CASE 0:21-cv-02128-SRN-KMM   Doc. 1   Filed 09/27/21   Page 9 of 10

44.     In addition, as the putative owners of intellectual property licensed by P Park for the purpose of performing its duties under the Venue Agreement, the Defendants had a duty to correctly identify that intellectual property to their licensee. When P Park asked Defendants whether they had the rights to the photographs taken by Dube, the Defendants breached that duty by failing to apprise P Park of Dube's competing claims. P Park justifiably relied upon Defendants' representations. Defendants' conduct, breach of duty, and/or misrepresentation are the sole cause of the fees and costs incurred by P Park in the Dube Litigation.

45.     P Park was obliged in the Dube Litigation to defend against the acts of the Defendants and defended solely and exclusively the acts of the Defendants in the Dube Litigation, with no misfeasance of its own.

46.     Upon receiving notice that it had been sued in the Dube Litigation from the Defendants, P Park promptly called upon the Defendants to defend P Park in the lawsuit.

47.     Although the Defendants initially promised to abide by their legal responsibility to defend P Park in the Dube Litigation, they repudiated that obligation in retaliation for P Park's successful invocation of its legal rights in an unrelated dispute.

48.     As a result, P Park incurred attorneys' fees and costs in excess of $75,000.

49.     As a result of Defendants' failure to defend P Park, P Park has been sued for nonpayment of fees by its counsel in the Dube Litigation, and is now incurring additional fees defending that action.

## PRAYER FOR RELIEF

WHEREFORE, P Park prays that the Court:

a)      Enter judgment for Plaintiff against Defendants, jointly and severally, on

Plaintiff's breach of contract claim, in an amount to be determined at trial, plus interest,

b)      Enter judgment for Plaintiff against the Defendants, jointly and severally,

on Plaintiff's indemnity claim in an amount to be determined at trial, plus interest,

c)      Award reasonable attorney's fees and costs, and

d)      Such other relief as may be deemed appropriate and proper.

DATED:  September 27, 2021                    GERAGHTY, O'LOUGHLIN & KENNEY,
                                             A Professional Association


                                             By      s/ Corinne G. Ivanca
                                                  Corinne G. Ivanca (#386774)
                                             1100 Alliance Bank Center
                                             55 East Fifth Street
                                             Saint Paul, MN 55101-1812
                                             Phone: (651) 291-1177
                                             FAX: (651) 291-9477
                                             *civanca@goklawfirm.com*

                                             PRESS KORAL LLP

                                             Jason M. Koral (*pro hac vice* application
                                             pending)
                                             641 Lexington Ave, Thirteenth Floor
                                             New York, NY 10022
                                             Phone: (212) 520-8270
                                             *jkoral@presskoral.com*

                                             ATTORNEYS FOR DEFENDANTS