## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

P PARK MANAGEMENT, LLC,

           Plaintiff,

v.

PAISLEY PARK FACILITY, LLC, and
COMERICA BANK & TRUST, N.A.,
as Personal Representative for the
Estate of Prince Rogers Nelson,

           Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 21-2128 (MJD/JFD)

Corinne Ivanca, Geraghty, O'Loughlin & Kenney, P.A., and Jason M. Koral, Press Koral LLP, Counsel for Plaintiff.

Lora Mitchell Friedemann, Joseph J. Cassioppi, and Anne E. Rondoni Tavernier, Fredrikson & Byron, PA, Counsel for Defendants.

## I.  INTRODUCTION

This matter is before the Court on Defendants' Motion for Sanctions

[Docket No. 18] and Defendants' Motion to Dismiss the Amended Complaint

[Docket No. 38].  The Court heard oral argument on March 22, 2022.

## II.  BACKGROUND

### A.  Factual Background

1

1.      **The Parties and Paisley Park**

After Prince Rogers Nelson ("Prince") died in April 2016, Prince's Estate,

including his properties and entities, such as Defendant Paisley Park Facility,

LLC ("PPF"), were owned by the then-Special Administrator for the Estate,

Bremer Trust.  (Am. Compl. ¶¶ 2, 9-10.)  In 2017, Defendant Comerica Bank &

Trust, N.A., ("Comerica") replaced Bremer Trust as Personal Representative for

the Estate of Prince Rogers Nelson.  (Id. ¶ 10.)

During the summer of 2016, Prince's home in Chanhassen, Minnesota,

known as Paisley Park, was converted into a museum ("Paisley").  Beginning in

August 2016, Plaintiff P Park Management LLC ("P Park") operated Paisley

under an August 17, 2016, Exhibition Operating Agreement ("EOA") executed by

PPF, an entity owned and controlled by the Estate.  (Am. Compl. ¶¶ 8-9;

Tavernier Decl., Ex. 1, EOA.)

The EOA contained an indemnification and defense clause between

Licensee P Park and Licensor PPF, providing that PPF, as Licensor:

> shall indemnify, defend, and hold Licensor [sic] harmless from
> claims, expenses (including costs of defense, penalties, interest and
> reasonable attorneys' fees), and causes of action asserted against
> Licensee by any other person that Licensee's use of Licensed
> Property as approved or directed by Licensee infringes any
> copyright or trademark.  Licensor shall have the absolute right in its

2

sole discretion to control the defense of any action to which this
indemnity applies, including any settlement thereof.

(EOA ¶ 6(b).)  "Licensed Property" includes "Photographs," and "Photographs"

means "those photographs or images, including print, digital, or any media of

any kind whatsoever of Prince owned and/or controlled directly or indirectly by

Licensor which Licensor specifically approves for use by Licensee in the

Exhibition or as marketing or promotional materials for the Exhibition."  (EOA

¶¶ 1(g), (k).)

The EOA is interpreted under Minnesota law.  (EOA ¶ 8(e).)

In May 2019, Comerica sent P Park notice of its intent to terminate the

EOA.  (Am. Compl. ¶ 14.)  P Park disputed the validity of the termination, and

the parties participated in mediation before Retired Magistrate Judge Keyes.

(Id.)  The mediation resulted in a settlement, and P Park and Comerica, acting on

behalf of PPF and the Estate, signed a Term Sheet on August 22, 2019.  (Am.

Compl. ¶ 15; Tavernier Decl., Ex. 2, Term Sheet.)  Under the Term Sheet, PPF

assumed operation of Paisley on October 1, 2019.  (Term Sheet ¶ 4.)

The Term Sheet modified the parties' indemnification responsibilities as

follows:

3

P Park represents that it is not aware that any employee, guest of Paisley Park or other third party has made a claim or demand relating in any manner to P Park's work under the Exhibition Operating Agreement.  If any such claims are made based on acts or events prior to August 26, 2019, other than claims or demands of which PPF is already aware or has received notice, P Park is responsible for the claim and will defend and indemnify PPF; for claims made based on acts or events between August 26, 2019 and September 30, 2019, the party at fault is responsible for the claim and will defend and indemnify the other party; for claims made based on acts or events occurring October 1, 2019 and later, PPF is responsible and will defend and indemnify P Park.

(Term Sheet ¶ 7.)

The Term Sheet further provided that the parties would enter into a formal and final settlement agreement consistent with the Term Sheet and that "[i]f any dispute arises between the parties concerning this term sheet, the parties agree that the dispute shall be presented to former Judge Jeffrey J. Keyes for binding resolution."  (Term Sheet ¶ 9; Am. Compl. ¶ 16.)

## 2.    The Dube Litigation

At some point, P Park had sought and obtained authorization from PPF and the Estate to use certain photographs of Prince taken by Madison Dube. (Am. Compl. ¶¶ 17- 18.)  P Park relied on Defendants' representations that they owned or controlled the rights for the photographs' use and duplication and used the Dube photographs in marketing materials.  (Id.)

4

On June 27, 2019, Dube sent a demand letter to the Estate asserting that she owned the copyrights for photographs used to promote Paisley. (Friedemann Decl., Ex. 2.)

On November 22, 2019, Dube filed a lawsuit in the District of Minnesota against PPF, Comerica, and P Park, among other defendants ("Dube Litigation"). (Am. Compl. ¶ 17; Friedemann Decl., Ex. 3, Dube Compl.) Dube v. NPG Music Publishing, et al., Case No. 19-cv-2968 (JRT/HB) (D. Minn.). Dube claimed that P Park had committed copyright infringement by using certain photos in connection with the EOA. (Dube Compl.) According to Dube's Complaint, she had first raised her claims with the Estate in June 2019. (Dube Compl.¶¶ 38-39.)

On December 10, 2019, P Park's attorney contacted Comerica's attorney to state that, because the Estate, through Bremer Trust, had approved the use of the Dube photographs by P Park, PPF and the Estate had a duty to indemnify and defend P Park in the Dube Litigation. (Am. Compl. ¶ 20.) Comerica's counsel stated that PPF and Comerica would stand by the approvals that had been provided by Bremer: "we will stand in their shoes." (Id.)

On December 12, 2019, P Park's counsel emailed Comerica's counsel the following email chain as proof that the Estate had previously approved P Park's

use of the Dube photographs: In September 2016, a proof of the Tour Book was
sent to various persons for approval, including the attorneys for the Estate; the
proposed Tour Book included Dube's "gold guitar" photograph.  (Am. Compl. ¶
21; Ivanca Decl., Ex. A at 21.)   Jill Radloff, the attorney at the time for
Defendants, wrote to the group: "We did not receive any comments/feedback
from family on this and you are clear to print." (Ivanca Decl., Ex. A. at 2.)  The
"gold guitar" photograph was the main photograph at issue in the Dube
Litigation.  (Dube Compl. ¶¶ 19-30.)

In a telephone call after the December 12, 2019, email, Comerica's counsel
stated that Defendants would agree to defend P Park in the Dube Litigation
conditioned on PPF and P Park signing their final Settlement Agreement.  (Am.
Compl. ¶ 21.)  Comerica's counsel also proposed that the parties wait until the
Dube Litigation was resolved to decide indemnity obligations because it was
likely that the Dube Litigation would be resolved in the Estate's favor or on
settlement terms that might render the indemnity issue moot.  (Id. ¶ 22.)

P Park alleges that it relied on Defendants' promise to defend it in the
Dube Litigation upon the signing of the final settlement agreement and, thus,

declined to assert a cross claim against Defendants in the Dube Litigation and,

instead, entered into a joint defense agreement with them.  (Am. Compl. ¶ 30.)

Comerica's counsel referenced the Estate's defense of P Park in several

emails.  (Am. Compl. ¶ 24.)  In a January 10, 2020, email, Estate attorney Lora

Friedemann stated: "Comerica's agreement to provide a defense to P Park in the

Dube matter is conditioned on a final settlement agreement having been

executed so we will need to work quickly to get both agreements done."  (Id.;

Tavernier Decl., Ex. 5.)

In a January 27, 2020, email, Friedemann wrote to P Park regarding a

dispute over which entity was entitled to revenue for tours and, in that email

stated:

> Also, as you know, the Estate indicated that it would provide
> a defense to P Park in the Dube case if we could resolve outstanding
> issues with respect to the museum and ink a final settlement
> agreement before answers needed to be filed.  Unless P Park changes
> its position with respect to ticket revenue we will not have finality
> with respect to the winddown of the museum before January 31
> when our clients must answer the Complaint.  **You should,
> therefore, take whatever steps are necessary to secure counsel to
> represent your client in the Dube lawsuit.**  Absent agreement on all
> outstanding issues with respect to the winddown of the museum,
> my firm will answer only on behalf of the Estate and related entities.

(Am. Compl. ¶¶ 24-25; Tavernier Decl., Ex. 6 (emphasis in original).)  In a second

email that day, Friedemann stated:

> With respect to the Dube lawsuit, the Estate offered to provide a
> defense to P Park *if and only if* we were able to resolve all disputes
> associated with the museum and sign the formal settlement
> agreement we have been working on over the past several weeks.
> The suggestion that the Estate promised anything more is
> inaccurate.  . . .

(Id.) (emphasis in original).

According to P Park, Defendants used the revenue sharing dispute as a

basis for delaying their obligation to defend P Park in the Dube Litigation, and P

Park was forced to retain outside counsel to answer the Dube complaint and

otherwise represent P Park in the Dube Litigation.  (Am. Compl. ¶ 26.)  The

Estate filed an answer in the Dube Litigation on January 31, 2020; P Park received

an extension of time to answer and filed its answer on February 5, 2020.  (Dube

Litigation [Docket Nos. 35-36].)

P Park alleges that the ticket revenue dispute was resolved in P Park's

favor, which displeased Defendants; thus, Defendants were motivated to renege

on their commitment to defend P Park in the Dube Litigation.  (Am. Compl. ¶¶

27, 29.)  After the ticket revenue dispute was resolved, Defendants asked P Park

to execute the final settlement agreement required by the Term Sheet.  (Id. ¶ 27.)

However, when P Park edited the draft final settlement agreement to state that

Defendants had agreed to defend P Park in the Dube Litigation, Defendants

rejected the edits.  (Id.)  The parties could not agree on the language for the

indemnification clause to include in the final settlement agreement, so they

submitted the matter to Retired Magistrate Judge Keyes for binding arbitration,

as required by the Term Sheet.  (Id. ¶ 31.)

The parties provided letter briefs to Magistrate Judge Keyes regarding the

indemnification provision.  (Friedemann Decl., Ex. 5.)

On April 23, 2020, Magistrate Judge Keyes ruled as follows:

> The only contractual indemnity obligations that PPF and P
> Park now have to each other are those set forth in Paragraph 7 of the
> Term Sheet.  The pre-existing cross-indemnity obligations set forth
> in Paragraph 6 of the EOA are not carried over post-settlement.  As a
> result of the negotiated settlement, both parties are relieved of
> certain obligations that they had under Paragraph 6 of the EOA to
> indemnify and defend the other party.  For example, P Park no
> longer has the obligation to indemnify and defend PPF for
> intellectual property right infringement claims as defined in
> Paragraph 6(a)(iii) of the EOA.  Similarly, PPF now has no obligation
> to indemnify and defend P Park for copyright or trademark
> infringement claims as defined in Paragraph 6(b) of the EOA.

> PPF's contractual indemnity obligation to P Park is thus
> limited to two types of claims: (a) claims made based on acts or
> events between August 26, 2019 and September 30, 2019 for which
> PPF is at fault, and (b) claims made based on acts or events
> occurring on October 1, 2019 and later.  And although P Park is

9

obligated to indemnify PPF for claims based on acts or events prior to August 26, 2019, this does not extend to claims or demands "of which PPF is already aware or has received notice." (Term Sheet at Par. 7)

My ruling is: (1) neither party has a contractual obligation to defend or indemnify the other for the Madison Dube claim; (2) Paragraph 1 of the Settlement Agreement should not provide that the indemnity provisions from the EOA survive the termination of the EOA; and (3) Paragraph 10 of the Settlement Agreement shall reflect the language from Paragraph 7 of the Term Sheet along with the change to the representation and warranty to Paragraph 10 agreed to by the parties stating that P Park was aware of the Dube claim.

This ruling is limited to the resolution of the contractual indemnity obligations that the parties have to each other as a result of the negotiated settlement. It is without prejudice to any other obligations the parties may have to each other as a matter of law for the claims in the Dube lawsuit. For example, it is without prejudice to P Park's position that the Estate or PPF is responsible for Dube's claims because of the Estate's role in approving the use of Dube images by P Park and without prejudice to PPF's position that P Park used Dube images without the Estate's approval.

(Am. Compl. ¶ 32; Tavernier Decl., Ex. 7, Keyes Decision.)

### 3.      Settlement Agreement

The final settlement agreement was signed by P Park and PPF in May

2020. (Am. Compl. ¶ 33; Tavernier Decl., Ex. 3, Settlement Agreement.) The

Settlement Agreement contained the following provision regarding

indemnification obligations:

> Indemnification: P Park represents that it is not aware that any
> employee, guest of Paisley Park or other third party has made a
> claim or demand relating in any manner to P Park's work under the
> Exhibition Operating Agreement, other than the complaint brought
> by Madison Dube in *Dube v. NPG Publishing, LLC*, Case No. 19-cv-
> 2968 (D. Minn. Filed November 22, 2019).  If any such claims are
> made based on acts or events prior to August 26, 2019, other than
> claims or demands of which PPF is already aware or has received
> notice, P Park is responsible for the claim and will defend and
> indemnify PPF; for claims made based on acts or events between
> August 26, 2019 and September 30, 2019, the party at fault is
> responsible for the claim and will defend and indemnify the other
> party; for claims made based on acts or events occurring October 1,
> 2019 and later, PPF is responsible and will defend and indemnify P
> Park.

(Settlement Agreement ¶ 10.)

The Settlement Agreement also provided:

> With the exception of claims for indemnity under this Agreement
> and the other obligations to perform under this Agreement, the
> Parties . . . agree to release and hereby do release and forever
> discharge the other . . . from all actions, causes of action, suits, debt,
> claims, liabilities, damages, expenses, and demands of every kind
> and nature . . . relating to the EOA, as of the date of this Agreement.

(Id. ¶ 11.)  Finally, the parties agreed that the Settlement Agreement "supersedes
and replaces any and all previous negotiations, commitments or writings"
between the parties.  (Id. ¶ 15.)  The Settlement Agreement is interpreted under
Minnesota law.  (Id. ¶ 19.)

The Settlement Agreement was signed after the answers were due and filed in the Dube Litigation.  After executing the Settlement Agreement, Defendants continued to refuse to defend P Park in the Dube Litigation.  (Am. Compl. ¶ 34.)

P Park asserts that, because it retained physical custody of and access to the documentary evidence sought by Dube in the Dube Litigation, it incurred a disproportionate share of the costs of document production in the Dube Litigation, which benefited Defendants.  (Am. Compl. ¶ 35.)

In July 2020, the parties negotiated a settlement with Dube, and the Dube Litigation was dismissed with prejudice on April 13, 2021.  (Dube Litigation [Docket No. 63, 78, 81].)

P Park allegedly did not pay the attorneys' fees incurred by its counsel in the Dube Litigation and was sued by its former counsel, Greene Espel PLLP, for nonpayment.  (Am. Compl. ¶ 36; Greene Espel PLLP v. P Park Management, LLC, Civil Case No. 21-1057 (MJD/JFD).)  P Park incurred additional attorneys' fees and costs defending that lawsuit, which was later settled in a confidential settlement agreement.  (Id.)

B.     **Procedural History**

12

On September 27, 2021, P Park filed a Complaint against Comerica and PPF in this Court.  [Docket No. 1]  This original Complaint asserted: Count 1: Breach of Contract; and Count 2: Indemnity.  Both claims were based on the Comerica and PPF's failure to defend P Park in the Dube Litigation.

On September 30, 2021, Defendants sent a letter to P Park advising that they believed its claims had already been litigated; the claims were released in the Settlement Agreement; the Settlement Agreement does not require that the Estate pay for P Park's defense in the Dube Litigation; and the claims against Comerica were barred by the statute of limitations.  (Tavernier Decl., Ex. 4.) Defendant demanded that P Park voluntarily dismiss the Complaint.  (Id.)  P Park did not respond to the letter.  (Friedemann Decl. ¶ 15.)

On October 22, 2021, Defendants served a motion for sanctions on Plaintiff. (Friedemann Decl., Ex. 12.)  On November 11, Plaintiff responded with a letter contending that the Complaint was properly pled, that Defendants' proposed sanctions motion mischaracterized the Keyes Decision, and explaining Plaintiff's legal argument regarding the statute of limitations and other arguments set forth in Defendants' proposed motion.  (Ivanca Decl., Ex. A.)

On November 12, 2021, Defendants' counsel and Plaintiff's counsel met and conferred via telephone regarding Defendants' planned motion to dismiss. [Docket No. 17]  During that call, P Park's counsel stated that P Park disagreed with Defendants' position but did not inform Defendants that P Park would be filing an Amended Complaint.  (Tavernier Decl. ¶ 9.)

On November 15, Defendants filed a motion for Rule 11 sanctions against Plaintiff and a motion to dismiss the Complaint.  [Docket Nos. 8,  18]

On December 6, 2021, Plaintiff filed an Amended Complaint asserting: Count 1: Negligent Misrepresentation (based on Defendants negligently representing that they owned or controlled the copyrights to the Dube photos); Count 2: Promissory Estoppel (based on Defendants promising to defend P Park in the Dube Litigation conditioned on P Park's signing of the final Settlement Agreement); Count 3: Breach of Contract (based on Defendants forming a contract with P Park to defend P Park in the Dube Litigation); and Count 4: Indemnity (based on P Park being sued in the Dube Litigation based solely on actions taken at the direction of, in the interest of, and in reliance on Defendants). [Docket No. 30]

Defendants now move to dismiss the Amended Complaint for failure to state claim upon which relief can be granted.  [Docket No. 38]

On March 8, P Park filed a Motion for Sanctions Pursuant to Local Rule 26.1(d)(3) [Docket No. 60] alleging that Defendants violated discovery rules by failing to provide P Park with copies of Defendants' insurance policies and requesting sanctions in the amount of P Park's attorneys' fees incurred in pursuing the sanctions motion.  A hearing on the motion is scheduled before Magistrate Judge Docherty on April 14, 2022.

## III.   DISCUSSION

### A.   Motion to Dismiss

#### 1.   Motion to Dismiss Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings. For example, courts may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Greenman v. Jessen, 787 F.3d 882, 887 (8th Cir. 2015) (citations omitted). In this case, the EOA, Term Sheet, Settlement Agreement, Keyes Decision, and January 10 and January 27 emails submitted as exhibits are embraced by the Amended Complaint and therefore properly considered on a motion to dismiss.

### 2.      Whether P Park's Present Claims Were Barred by the Settlement Agreement

The Court concludes that the Settlement Agreement bars all four of P Park's claims asserted in the Amended Complaint.

#### a)      Whether the Claims in the Current Lawsuit Are Related to the EOA

The Settlement Agreement contains a release for all claims – known or unknown – "relating to the EOA." (Settlement Agreement ¶ 11.) "Relating to"

16

means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."  Phone Recovery Servs., LLC v. Qwest Corp., 919 N.W.2d 315, 320 (Minn. 2018) (citation omitted).

The claims against P Park in the Dube Litigation were claims "relating to the EOA."  P Park's Amended Complaint in the current case explicitly alleges that "Dube's claims related to the use of certain photographs" and that "P Park had sought and obtained authorization from the Estate and PP Facility before it made use of the photos in connection with the [EOA] Agreement."  (Am. Compl. ¶ 18.)  Thus, Dube's claims against P Park are based on P Park's use of the photographs under the EOA – they are claims relating to the EOA.  Moreover, in the Settlement Agreement, P Park agreed that the Dube Litigation was "relating in part to conduct during the term of the EOA," (Settlement Agreement ¶ 12) and that "P Park represents that it is not aware that any . . . third party has made a claim or demand relating in any manner to P Park's work under the Exhibition Operating Agreement, other than the complaint brought by Madison Dube" (id. ¶ 10).

P Park's current claims against Defendants are based on the Dube claims and Defendants' obligation to defend P Park for those claims based on their

relationship under the EOA. The negligent misrepresentation and indemnity claims are based on Defendants' conduct in allegedly approving use of the photographs under the EOA. The breach of contract and promissory estoppel claims are based on Defendants' alleged actions promising to defend and indemnify P Park for conduct occurring under the EOA. Therefore, P Park released the claims currently asserted against Defendants in the Settlement Agreement release.

### b)    Carve-Out Language: Paragraph 10 of the Settlement Agreement

The Settlement Agreement's carve-out language in the release (Settlement Agreement ¶ 11) allowing indemnity claims agreed-to in Paragraph 10 to survive has no application here because Paragraph 10 does not state that Defendants have any obligation to defend or indemnify Plaintiff for the Dube Litigation. The indemnification provision in the Settlement Agreement refers to Dube's claims, but does not impose indemnity obligations on either party, which is consistent with Magistrate Judge Keyes' ruling. (Settlement Agreement ¶ 10.) The indemnification clause identifies the situations where an obligation to provide indemnity exists and does not require indemnity for the Dube Litigation. Although the Keyes Decision stated that it was "without prejudice to any other

18

obligations the parties may have to each other as a matter of law for the claims in

the Dube Lawsuit," the parties were free to negotiate whatever language they

desired apart from that decision.  The Settlement Agreement is the parties' final

agreement on all topics addressed therein, including indemnification.

Additionally, P Park cannot assert a common law indemnity claim when

there is an unambiguous indemnification provision in the Settlement Agreement.

See Art Goebel, Inc. v. N. Suburban Agencies, Inc., 567 N.W.2d 511, 515-16

(Minn. 1997) (holding that where there is a "clear and unambiguous" contractual

indemnity right, the parties "impliedly excluded all other scenarios" under

which the parties would indemnify one another and the contract provided the

parties' "exclusive right to indemnity," and precluded the allegation of common

law indemnity rights).

The Settlement Agreement was signed in May 2020, after Magistrate Judge

Keyes issued his decision on April 23, 2020.  The parties agreed that the

Settlement Agreement "constitutes the entire agreement of the Parties and

supersedes and replaces any and all previous negotiations, commitments, or

writings, specifically including but not limited to the Term [Sheet]."  (Settlement

Agreement ¶ 15.)  Therefore, the Settlement Agreement supersedes any

obligations imposed by the prior Keyes Decision.

### c)    EOA Integration Clause

Even if P Park's claims fell outside the scope of the release in the

Settlement Agreement, they are barred due to the Settlement Agreement's

integration clause, which renders void any ancillary agreements or negotiations

between the parties.  The integration clause provides:

> <u>Entire Agreement</u>: This Agreement, including all exhibits and
> attachments, as well as the surviving terms of the EOA and any
> confidentiality agreement, constitutes the entire agreement of the
> Parties and supersedes and replaces any and all previous
> negotiations, commitments or writings, specifically including but
> not limited to the Term.  No representation, additional promise or
> agreement not set out in this Agreement has been made as
> consideration for this Agreement and the signing hereof has not
> been induced by any such representation, additional promise or
> agreement.

(Settlement Agreement ¶ 15.)

Thus, even if Defendants had made a separate commitment to defend P

Park in the Dube Litigation, as set forth in the promissory estoppel claim, that

commitment was superseded by the Settlement Agreement.  And, to the extent

that P Park claims that Defendants promised to defend P Park in the Dube

Litigation in exchange for the parties signing a final settlement agreement, that

20

agreement was voided by the terms of the Settlement Agreement that was finally

executed, after the answers were already filed in the Dube Litigation: P Park

agreed: "No representation, additional promise or agreement not set out in this

Agreement has been made as consideration for this Agreement and the signing

hereof has not been induced by any such representation, additional promise or

agreement."  (Settlement Agreement ¶ 15.)

Because the Settlement Agreement "supersedes and replaces all previous

negotiations, commitments or writings," P Park cannot claim that the Estate's

obligations to P Park that preceded the Settlement Agreement survived its

execution.  See Qwinstar Corp. v. Anthony, 882 F.3d 748, 753 (8th Cir. 2018), as

amended (Feb. 26, 2018) ("[A] court need not look beyond the writing to

determine whether a contract is a complete integration, where a clause explicitly

states the parties' intent.") (quoting Maday v. Grathwohl, 805 N.W.2d 285, 288

(Minn. Ct. App. 2011)).  Any ancillary promises or contracts, including those

alleged in P Park's promissory estoppel and breach of contract claims, are

merged into and extinguished by the Settlement Agreement.  See Lehman v.

Stout, 112 N.W.2d 640, 644 (Minn. 1961) (holding that, where a contract is fully

integrated, all previous negotiations are "waived, abandoned, and merged into

the writing").  Thus, any common law indemnification duties, contract promises,

offers, or negotiations that preceded the Settlement Agreement were merged into

the Settlement Agreement.

### d)       Collateral Estoppel

Finally, the Court rejects P Park's claim that collateral estoppel bars

Defendants'' motion to dismiss.

Collateral estoppel applies where:

> (1) the issue was identical to one in a prior adjudication; (2) there
> was a final judgment on the merits; (3) the estopped party was a
> party or in privity with a party to the prior adjudication; and (4) the
> estopped party was given a full and fair opportunity to be heard on
> the adjudicated issue.

Ellis v. Minneapolis Comm'n on Civil Rights, 319 N.W.2d 702, 704 (Minn. 1982)

(citations omitted).

The Keyes Decision addressed the terms of the Term Sheet.  The final

Settlement Agreement was entered into after the Keyes Decision and was not

addressed by the Keyes Decision.  And the Settlement Agreement superseded

and replaced all previous agreements, including the Term Sheet.

In any case, Magistrate Judge Keyes ruled that neither party is obligated by contract to indemnify the other for Dube's claims.  The Keyes Decision did not consider claims that P Park raised for the first time in the Amended Complaint.

**B.      Defendants' Motion for Sanctions**

**1.      Rule 11 Standard**

Rule 11 of the Federal Rules of Civil Procedure requires an attorney to certify that, for any pleading or motion,

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

Rule 11 requires attorneys to "conduct a reasonable inquiry of the factual and legal basis for a claim before filing." <u>Coonts v. Potts</u>, 316 F.3d 745, 753 (8th Cir. 2003). "To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis." <u>Id.</u> The Court must decide if a "reasonable and competent" attorney would not "believe in the merit of an argument." <u>Id.</u> (citation omitted).

"If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the [Rule 11] motion." Fed. R. Civ. P. 11(c)(2).

### 2.    Analysis

The Court denies Defendants' motion for sanctions. The Amended Complaint is subject to dismissal based on the Settlement Agreement entered into between the parties. Although P Park's argument that the Settlement Agreement does not bar its claims fails, its argument is not so frivolous as to warrant sanctions.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1.    Defendants' Motion for Sanctions [Docket No. 18] is **DENIED**.

24

2.     Defendants' Motion to Dismiss the Amended Complaint [Docket No. 38] is **GRANTED**, and this matter is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 29, 2022            s/Michael J. Davis

Michael J. Davis
United States District Court