# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

P PARK MANAGEMENT, LLC,

        Plaintiff,

v.

                                       **ORDER AND MEMORANDUM**
                                       Civil File No. 21-2128 (MJD/JFD)

PAISLEY PARK FACILITY, LLC, and
COMERICA BANK & TRUST, N.A.,
as Personal Representative for the
Estate of Prince Rogers Nelson,

        Defendants.

Corinne Ivanca, Geraghty, O'Loughlin & Kenney, P.A., and Jason M. Koral, Press Koral LLP, Counsel for Plaintiff.

Lora Mitchell Friedemann, Joseph J. Cassioppi, and Anne E. Rondoni Tavernier, Fredrikson & Byron, PA, Counsel for Defendants.

## I.  INTRODUCTION

      This matter is before the Court on Plaintiff P Park Management's ("P

Park") Rule 59(e) Motion for Relief From Judgment.  (Doc. 81.)   P Park seeks

relief from the Court's dismissal of its claims with prejudice because, according

to P Park, the Court's finding that the Parties' final Settlement Agreement ("the

1

Settlement Agreement") released Defendants from and precluded all claims was based on errors of law and fact.  (Doc. 83.)   P Park argues that the Court erroneously rejected its argument that Retired Magistrate Judge Jeffrey Keyes, who served as arbitrator in this case, and who "had mediated and arbitrated the dispute that terminated in the Settlement Agreement, had previously interpreted the same Settlement Agreement language . . . and held that Plaintiff's claims for indemnity and defense were not precluded."  (Id. at 1.)

## II.   WHETHER THE COURT SHOULD CONSTRUE THE MOTION FOR RELIEF FROM JUDGMENT AS A MOTION TO RECONSIDER

Defendants Paisley Park Facility, LLC and Comerica Bank and Trust, N.A. ("Defendants") argue that although P Park styles its motion as a motion for relief from judgment, the motion is actually a motion for the Court to reconsider and reverse its March 29, 2022 Order granting Defendants' Motion to Dismiss and awarding judgment to Defendants ("the Order").  (Doc. 92 at 1-3.)  Defendants assert that P Park failed to comply with the Local Rules governing motions to reconsider and failed to state a legal or factual basis meriting reconsideration and therefore the motion should be denied.  Defendants also seek an award of attorneys' fees for having to respond to this motion.

### A.    The Parties' Arguments

Defendants argue that it is the substance of the motion, not the title of the

motion, that controls the type of motion a party files and that this motion is

actually a motion for reconsideration.  (Id. at 2 (citing BBCA, Inc. v. United

States, 954 F.2d 1429, 1431–32 (8th Cir. 1992) ("[T]he  substance of a motion rather

than the form of a motion is controlling."); United States v. Petters, No. CV 08-

5348 ADM/JSM, 2016 WL 4925783, at *1 (D. Minn. Sept. 15, 2016) (construing

motion that sought "essentially the same relief as that denied" by previous order

of the court as motion to reconsider), aff'd, 2017 WL 5514560 (8th Cir. Mar. 8,

2017).)

Defendants assert that since this motion is properly considered a motion

for reconsideration, the Court should refuse to hear the motion because (1) P

Park did not seek the Court's permission before first filing the motion and (2) P

Park failed to meet and confer prior to filing the motion, instead phoning

Defense Counsel after the motion was filed.

Under D. Minn. LR 7.1(j), a party must show compelling circumstances to

obtain permission to file a motion to reconsider, and P Park did not seek the

Court's permission prior to filing the instant motion.  Therefore, Defendants

argue that the Court should decline to entertain the motion.  (Id. at 2-3 (citing In

3

re Nash Finch Co. Sec. Litig., 338 F. Supp. 2d 1037, 1038 (D. Minn. 2004), which

construed a Rule 59(e) motion as a motion for reconsideration because the court

had dismissed the case based on its denial of a motion to amend the complaint

and finding that the plaintiffs "simply want[ed] the Court to reconsider its

decision denying leave to amend"); Nordgren v. Hennepin Cnty., No. CV 21-125

(JRT/TNL), 2022 WL 1125955, at *2 (D. Minn. Apr. 15, 2022) (construing motion to

amend judgment as motion to reconsider, in part, because the court had already

denied motion to amend pleadings), appeal docketed, No. 22-1902 (8th Cir. May

2, 2022).)

   P Park responds that Defendants fail to consider newer case law and fail to

consider the different purposes served by motions for reconsideration, which are

not authorized by the Federal Rules of Civil Procedure, but only by Local Rules,

and post-judgment motions under Federal Rules of Civil Procedure 59 and 60.

   P Park notes that the Eighth Circuit and this District both recognize that

the local rules governing motions for reconsideration do not apply to Rule 59(e)

motions.  (Doc. 94 at 2-4 (citing, inter alia, Auto Servs. Co. v. KPMG, LLP, 537

F.3d 853, 857 (8th Cir. 2008) (holding that "while the local rule cited by the

District Court may apply to motions for reconsideration of a court's interlocutory

4

rulings, we doubt that the local rule was intended to apply to post-judgment

motions filed [under] Rule 59(e).") (cleaned up); DuBose v. Kelly, 187 F.3d 999,

1002 n.1 (8th Cir. 1999) (stating that the court understood that the Minnesota

local rule establishing procedures for filing motions to reconsider was intended

to apply to "litigants' desire to get reconsideration of pre-judgment actions by

the trial court"); Benson v. Kemske, No. CV 17-3839 (MJD/DTS), 2020 WL

5820492, at *1 (D. Minn. Sept. 30, 2020) (holding that "Plaintiffs have a right to

file their Rule 59(e) motion without Court permission") (citing DuBose, 187 F.3d

at 1002 n.1).)

P Park notes that the Eighth Circuit has even held that when a motion for

reconsideration is made in response to a final order, that motion is properly

construed as a Rule 59(e) motion.  See Schoffstall v. Henderson, 223 F.3d 818, 827

(8th Cir. 2000) (holding that when the motion is made in response to a final

order, Rule 59(e) applies) (citing Broadway v. Norris, 193 F.3d 987, 989 (8th Cir.

1999)).  Therefore, according to P Park, Defendants' reliance on Nash Finch and

Nordgren, which neither acknowledge "or appear to be aware of" DuBose or

Auto Services, and Schoffstall are misplaced.  (Doc. 94 at 5.)   Nash Finch was

decided prior to <u>Auto Services</u>; <u>Nordgren</u> was decided after relevant Eighth

Circuit cases but failed to acknowledge them.  (<u>Id.</u>)

### B.    Analysis

P Park is correct regarding Court permission.  The cases cited by

Defendants considered non-dispositive rulings, not final judgments.  Even

<u>BBCA</u>, cited by Defendants, stated that "[t]o be a Rule 59(e) motion," the party

filing the motion "must have sought a substantive change in the judgement."

954 F.2d at 1431-32.   Likewise, <u>Petters</u> and <u>Nash Finch</u>, also cited by Defendants,

were not seeking reconsideration of judgments.  <u>See</u> <u>Petters</u>, 2016 WL 4925783, at

*1 (seeking reconsideration of denial of motion for public accounting); <u>Nash</u>

<u>Finch</u>, 338 F. Supp. 2d at 1038 (Rule 59(e) motion was actually seeking

reconsideration of denial of leave to amend complaint).  Although <u>Nordgren</u>

stated that when "a motion under Rule 59(e) seeks essentially the same relief as

that denied by the Court's previous Order, the Motion will be construed as a

motion to reconsider," 2022 WL 1125955, at *1, that case appears to be an outlier

among cases addressing judgments.  (Citation cleaned up.)  The case cites no

cases on point (i.e., cases where motions for relief from judgment were construed

as motions for reconsideration).  <u>Id.</u> at *2.  Instead, it relies on the general rule

that the substance of the motion rather than its form controls.  <u>Id.</u> (citing <u>BBCA</u>,

6

954 F.2d at 1431-32; Nash Finch, 338 F. Supp. 2d at 1038; Petters, 2016 WL

4925783, at *1).  The case is currently on appeal to the Eighth Circuit.  See

Nordgren v. Hennepin Cnty., No. 22-1902 (8th Cir. May 2, 2022).

Thus, final judgments are considered under Rule 59(e) and permission of

the Court was not required prior to filing.  Benson, 2020 WL 5820492, at *1;

Schoffstall, 223 F.3d at 827.

C.      Conclusion

Based on the above discussion, the Court considers the instant motion a

motion for relief from judgment that did not require the Court's permission prior

to filing.  The motion is ripe for consideration.

III.    RELEVANT BACKGROUND FACTS

Prior to the Parties reaching a final Settlement Agreement regarding

expiration and termination of an Exhibition Operating Agreement ("EOA") and

winding up P Park's activities relating to Paisley Park and matters described in

the EOA, the Parties executed a Term Sheet, which they agreed would be

superseded and replaced by a final Settlement Agreement.  (Settlement

Agreement at 2.)   The Settlement Agreement provided that the EOA was

terminated effective September 30, 2019, except for certain sections that are not

relevant to this discussion.  (Id. ¶ 1.)

Prior to reaching a final Settlement Agreement, the Parties had submitted the issue of indemnification to arbitration with Former Magistrate Judge Jeffrey Keyes.  In advance of the arbitration, the Parties submitted letter briefs to Judge Keyes outlining their arguments.  On April 23, 2020, Judge Keyes rendered his decision regarding the Parties' indemnification obligations.  (Doc. 41-2.)

With this guidance, the Parties drafted the final Settlement Agreement, signed in May 2020, that included the following indemnity provision:

> Indemnification: P Park represents that it is not aware that any employee, guest of Paisley Park or other third party has made a claim or demand relating in any manner to P Park's work under the Exhibition Operating Agreement, other than the complaint brought by Madison Dube in Dube v. NPG Music Publishing, LLC, Case No. 19-cv-2968 (D Minn. Filed November 22, 2019). If any such claims are made based on acts or events prior to August 26, 2019, other than claims or demands of which PPF is already aware or has received notice, P Park is responsible for the claim and will defend and indemnify PPF; for claims made based on acts or events between August 26, 2019 and September 30, 2019, the party at fault is responsible for the claim and will defend and indemnify the other party; for claims made based on acts or events occurring October 1, 2019 and later, PPF is responsible and will defend and indemnify P Park.

(Settlement Agreement ¶ 10.)

The Settlement Agreement also provided:

> Release:  With the exception of claims for indemnity under this Agreement and the other obligations to perform under this Agreement, the Parties . . . agree to release and hereby do release

8

and forever discharge the other . . . from all actions, causes of action, suits, debt, claims, liabilities, damages, expenses, and demands of every kind and nature . . . relating to the EOA, as of the date of this Agreement.

(Id. ¶ 11.)

## IV.   DISCUSSION

### A.   Legal Standard

Rule 59(e) motions serve a limited function of correcting manifest errors of law or fact or to present newly discovered evidence.  Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment.

Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills, 141 F.3d 1284, 1286 (8th Cir. 1998) (citations omitted).  Relief is granted under Rule 59(e) only in "extraordinary circumstances."  Lang v. Minneapolis, No. CIV. 13-3008 DWF/TNL, 2015 WL 5157504, at *1 (D. Minn. Sept. 2, 2015) (citing United States v. Young, 806 F.2d 805, 806 (8th Cir. 1986)).  The Court has broad discretion when deciding whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e).  United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir. 2006) (citation omitted).

### B.   Whether the Court's Previous Order Contained Manifest Errors of Law or Fact

In the Order, the Court rejected P Park's claim that collateral estoppel based on Judge Keyes' Decision barred Defendants' motion to dismiss.  (Doc. 77 at 22-23.)  The Court held that the Keyes Decision addressed the terms of the Term Sheet; the final Settlement Agreement was entered into after the Keyes Decision and was not addressed by the Keyes Decision; and that the Settlement Agreement superseded and replaced all previous agreements, including the Term Sheet.  (Id. at 22.)  The Court also found that "[t]he Keyes Decision did not consider claims that P Park raised for the first time in the Amended Complaint."  (Id. at 23.)

P Park now asserts that the "Order rejected the collateral estoppel effect of the Keyes Decision on the faulty factual assumptions that: (1) the Settlement Agreement 'was not addressed by' the Keyes Decision, and (2) '[t]he Keyes Decision did not consider claims that P Park raised for the first time in the Amended Complaint.'"  (Doc. 83 at 1-2 (bracket in original).)  P Park argues that the Order does not explain the factual basis for these "assumptions" and asserts that both are contradicted by the allegations of the Amended Complaint, the letter briefing to Judge Keyes, and the Keyes Decision.  (Id. at 2.)   It states that

10

the Court did not properly explain the factual basis for its conclusion that

collateral estoppel does not apply in this case.  (Id. at 3.)

Defendants proffer the general rebuttal that P Park has not met the high

threshold necessary for granting this motion and fails to identify any manifest

error of law in the Order, present any newly-discovered evidence, or identify

extraordinary circumstances requiring relief.  (Doc. 92 at 3-4.)  Defendants argue

that P Park is merely "rehash[ing] the same argument it made in opposition to

the Estate's motion to dismiss" and the Court was clear that the Keyes Decision

addressed the terms in the Term Sheet, that the Settlement Agreement was

entered into after the Keyes Decision and was not addressed by the Keyes

Decision, and that the final Settlement Agreement superseded and replaced all

previous agreements, including the Term Sheet.  (Id.)

P Park states that for purposes of this motion, the following language of

the Keyes Decision is relevant:

> (2) Paragraph 1 of the Settlement Agreement should not provide that
> the indemnity provisions from the EOA survive the termination of
> the EOA. . . .
>
> This ruling is limited to the resolution of the contractual indemnity
> obligations that the parties have to each other as a result of the
> negotiated settlement.  It **is without prejudice to any other**
> **obligations the parties may have to each other as a matter of law**

**for the claims in the Dube lawsuit**.  For example, it is without
prejudice to P Park's position that the Estate or PPF is responsible
for Dube's claims because of the Estate's role in approving the use of
Dube images by P Park and without prejudice to PPF's position that
P Park used Dube images without the Estate's approval.

(Doc. 83 at 2-3 (citing, <u>inter</u> <u>alia</u>, the Order at 10) (emphasis added).)

P. Park asserts that this language shows that Judge Keyes "specifically

singled out the very claims brought in this lawsuit as among those being

preserved."  (<u>Id.</u> at 3.)

### 1. Whether the Order Explained the Factual Basis for Certain Conclusions

P Park first alleges that the Court erred because it failed to state the factual

basis for its conclusions that collateral estoppel does not apply to the Keyes

Decision because (1) the final Settlement Agreement was not addressed by the

Keyes Decision and (2) because the Keyes Decision did not consider claims that P

Park raised for the first time in the Amended Complaint.   (<u>Id.</u>)

### a) Analysis

Contrary to P Park's argument, the Order supports its findings.  The Order

explained that the Settlement Agreement superseded and replaced all previous

"negotiations, commitments or writings" and that P Park could not claim that

any of the Estate's obligations preceding the Settlement Agreement survived

12

execution of that Agreement.  (Doc. 77 at 21.)  The Order also noted that the

Keyes Decision addressed the terms in the Term Sheet but the final Settlement

Agreement, which was entered into after the Keyes Decision, superseded and

replaced all previous agreements, including the Term Sheet.  (Id. at 22.)  The

Order also held, "In any case, Magistrate Judge Keyes ruled that neither party is

obligated by contract to indemnify the other for Dube's claims," which shows

that even if the Keyes Decision had somehow survived, it would not help P Park.

(Id. at 23.)

Although P Park argues that the Order does not support its finding that

the Keyes Decision did not consider claims that P Park raised for the first time in

the Amended Complaint, no explanation was necessary.   It is axiomatic that

Judge Keyes could not address issues in a complaint that was filed more than 18

months after he rendered his decision.  Although P Park asserts that this makes

no difference because it is an "undeniable fact that the verbatim language of the

Settlement Agreement was before Judge Keyes and that his decision interprets

the effect and meaning of that language" (Doc. 83 at 3 n.1), this fact does make a

difference.  First, the "verbatim language of the Settlement Agreement" was not

before Judge Keyes at the time he rendered his decision.  The Term Sheet, EOA,

and other documents were before him and, based on his reading of the relevant

documents and the Parties' arguments, he decided what terms should be

incorporated into a settlement agreement.  Even if some of the language from the

various documents was incorporated into the final Settlement Agreement, that is

not the same as Judge Keyes having read the completed final Settlement

Agreement.

Moreover, even if the language was identical, the integration clause

rendered the Keyes Decision unenforceable.  As the Order states, "the Settlement

Agreement supersedes any obligations imposed by the prior Keyes Decision."

(Doc. 77 at 20.)  Finally, the Keyes Decision did not "interpret the effect and

meaning" of any language.  The decision merely stated the final language Judge

Keyes decided should be incorporated into the Indemnity Clause.  (Doc. 41-2.)

The Decision contains very little reasoning, analysis, or explanation.  (Id.)

### b)    Conclusion

The Court finds that the Order explained the factual basis for the

conclusions with which P Park takes issue.  The Order supports its conclusions

and, unlike P Park, reaches a logical conclusion regarding whether Judge Keyes

14

could review a settlement agreement that did not yet exist at the time of the

arbitration.

> ### 2. Whether Judge Keyes Addressed the Language of the Final Settlement Agreement

P Park argues that contrary to the Order, the Amended Complaint "plainly

avers that the Keyes Decision addressed 'the wording of the indemnification

clause in [the] final settlement agreement.'" (Doc. 83 at 3 (emphasis omitted).) P

Park relies on Paragraph 31 of the Amended Complaint, which states, "Having

reached an impasse regarding the wording of the indemnification clause in final

[sic] settlement agreement, P Park and Defendants submitted the issue for

binding arbitration to Retired Magistrate Jeffrey Keyes." P Park notes that the

impasse was precipitated by its perception that Defendants had reneged on their

promise to defend P Park in the Dube litigation. (Amend. Compl. ¶ 28 ("After

resolution of the ticket revenue dispute, the Defendants requested that P Park

execute the final settlement agreement called for in the Term Sheet. But when P

Park edited the draft final settlement agreement to reflect the Defendants'

agreement to defend P Park in the Dube matter, they refused to agree to the

edits.").)

> #### a) Analysis

15

The cited language of the Amended Complaint does not give rise to a manifest error of law or fact. The factual background of the Parties' dispute is just that: P Park's version of the facts. To the extent P Park asserts that the Amended Complaint states that Judge Keyes addressed the language of the final Settlement Agreement, for the reasons discussed above, he did not.

### b)      Conclusion

The Court finds this is the same basic argument as just discussed. Therefore, for the same reasons stated above, the Court holds that Judge Keyes did not address the language of the Final Settlement Agreement.

### 3.      Whether Letter Briefing Sent to Judge Keyes "Demonstrates Conclusively that the Arbitrator's Ruling Covered this Exact Dispute and Addressed the Final Settlement Agreement"

P Park argues that letter briefing submitted to Judge Keyes prior to arbitration regarding the final Settlement Agreement establishes the two following facts:

(1)      the parties presented to Judge Keyes the specific indemnification language used in the final Settlement Agreement and asked him to construe its meaning and effect,

(2)      P Park specifically presented to Judge Keyes the very same claims it brought in this lawsuit, that Defendants were bound by their written agreement to defend P Park from the <u>Dube</u> claims and that Defendants should be required to defend and

indemnify P Park because the Estate approved the use of
Dube images by P Park.

(Doc. 83 at 5-6 (paragraph break added).)

P Park asserts that the Parties made the same arguments to Judge Keyes
that they made to the Court regarding the Defendant's Motion to Dismiss.  (Id. at
4.)  P Park notes that in their letter brief to Judge Keyes, Defendants admitted
that the Estate had agreed "to provide a defense to P Park in the Dube matter,
conditioned on P Park's execution of the final Settlement Agreement," which P
Park states should be construed to eliminate all claims to indemnity and defense.
(Id. at 4-5.)  P Park also notes that Defendants did not disagree with the general
principle that P Park should receive compensation from Defendants for damages
it might have to pay for uses of Dube photos that had been approved by the
Estate and that the Estate admitted to approving at least two uses.  (Id. at 5.)

The Court notes that P Park's reference to two approved uses is based on
Defendants' letter brief to Judge Keyes.  Prior to the Parties executing the
Settlement Agreement, Defendants agreed to indemnify P Park for only two
specific uses of the Dube "gold guitar" photo because the Estate had approved
those uses and any liability resulting from the uses would likely fall to the Estate.
(Doc. 21-7 (Def. Reply Letter Br. to Judge Keyes) at 2-3.)

17

### a)   Analysis

Here, P Park appears to misconstrue both the Keyes Decision and the Order.  The indemnification issue was resolved by the Settlement Agreement, which "supersedes and replaces all previous negotiations, commitments or writings."  Pursuant to that Agreement, PPF need only indemnify P Park (1) for claims based on acts occurring between August 26, 2019 and September 30, 2019 if PPF was at fault, or (2) for claims "based on acts or events occurring October 1, 2019 and later."   Moreover, as the Court stated in its Order, even if P Park argued that Defendants agreed to defend P Park in the Dube litigation in exchange for the Parties signing a final settlement agreement,

> that agreement was voided by the terms of the Settlement Agreement that was finally executed, **after** the answers were already filed in the Dube Litigation: P Park agreed: "**No representation, additional promise or agreement not set out in this Agreement has been made as consideration for this Agreement** and the signing hereof has not been induced by any such representation, additional promise or agreement."

(Doc. 77 at 20-21 (emphasis added).)

Letter briefing shows that the only indemnification Defendants promised was for the uses of the "gold guitar photo" the Estate approved and therefore for which the Estate likely bore responsibility.  (Doc. 21-7 (Def. Reply Letter to Judge Keyes) at 2-3.)  A willingness to indemnify yourself or your codefendant does not

indicate a willingness to indemnify a third party.  Moreover, the Settlement

Agreement was not signed prior to the time answers were due in the Dube case,

which was a contingency to indemnity, so any other promises to indemnify not

memorialized in the Settlement Agreement are unenforceable.  (Doc. 77 at 20-21

("to the extent that P Park claims that Defendants promised to defend P Park in

the Dube Litigation in exchange for the parties signing a final settlement

agreement, that agreement was voided by the terms of the Settlement Agreement

that was finally executed, **after** the answers were already filed in the Dube

Litigation") (emphasis added).)

Signing a settlement agreement had been a contingency to indemnity

contained in a January 27, 2020 email from Defendant Estate's attorney to P Park

stating that it would "provide a defense to P Park in the Dube case if [the parties]

could resolve outstanding issues with respect to the museum and ink a final

settlement agreement before answers need to be filed" in Dube.  (Id. at 7 (citing

Amend. Compl. ¶¶ 24-25; Tavernier Decl. Ex. 6).)

### b)  Conclusion

The Court finds that letter briefing sent to Judge Keyes does not

demonstrate that the Keyes Decision covered this dispute and did not address

the Settlement Agreement.  As previously discussed, the Settlement Agreement did not exist at the time Judge Keyes rendered his decision.  Furthermore, the indemnification issue was resolved by the Settlement Agreement, which "supersedes and replaces all previous negotiations, commitments or writings." In addition, letter briefing shows that the only indemnification Defendants promised was for the two situations in which the Estate approved the use of Dube photos and for which the Estate therefore likely bore responsibility.  And, as noted in the Order, the Defendants' previous offer to indemnify P Park was premised on signing a final settlement agreement prior to the time for filing answers in the Dube case, which did not occur.

### 4.    Whether the Order Ignored the Keyes Decision

P Park argues that the Order ignored the Keyes Decision, which "specifically preserved [its] claims [and] addressed and dictated the terms of the Settlement Agreement."  P Park asserts that in holding that the Keyes Decision addressed the Term Sheet but not the Settlement Agreement, the Court erred, "without factual support or citation" and that this "assumption" contradicted the Amended Complaint and misread the factual record.   (Doc. 83 at 6.)

P Park states that the Parties' entire dispute was based on Defendants'
proposal of indemnity language used in the final Settlement Agreement "and a
key purpose of the Keyes decision was to decide what langue [sic] of the
Settlement Agreement would be." (Id.)  P Park continues by arguing that Judge
Keyes "reviewed the language of the final Settlement Agreement and directed
the parties to include that exact language in the Settlement Agreement." (Id. at 6-
7.)

P Park also argues that the Order erred by assuming, again "without
factual support or citation and contrary to the allegations in the Amended
Complaint," that the Keyes Decision did not consider the claims presented in the
lawsuit, when letter briefing raised the same claims and Judge Keyes interpreted
Settlement Agreement language as not precluding P Park's claims.  According to
P Park, the Keyes Decision interpreted the Settlement Agreement language as not
precluding P Park's claims "based on the Estate's agreement to defend and the
Estate's concession that it remained responsible for uses of the Dube photos it
had previously approved." (Id. at 7.)  P Park takes the position that its
interpretation is the only logical interpretation because otherwise it is unclear
"what claims the Order believes the Keyes Decision was preserving if not the

claims in this case."  (Id.)  P Park continues, "If the reasoning of the Order is

accepted and the Settlement Agreement held to absolutely bar all claims of

indemnity and defense, then there are no such claims.  But that is tantamount to

overruling Judge Keyes, who clearly ruled that such claims existed and were

preserved."  (Id.)

P Park's final argument follows:

Finally, because the Keyes decision did address the language of the
Settlement Agreement with respect to P Park's present claims, the
integration clause of the Settlement Agreement is irrelevant.  It does
not matter whether the Settlement Agreement superseded prior
agreements, because, by virtue of the Keyes decision, the Settlement
Agreement was not intended to preclude (and did not preclude) P
Park's claims for indemnity and defense of the Dube action, other
than contractual claims under the EOA. The integration clause
cannot be used to expand the effect of Settlement Agreement, as
applied and interpreted in the binding Keyes Decision.

(Id.)

### a)    Analysis

First, P Park's redundant argument that the Court erred by holding that

the Keyes Decision addressed the Term Sheet and not the Settlement Agreement

has already been dispatched.   The Court did not misread the record.

Second, P Park's assertion that the Keyes Decision "specifically preserved

[its] claims [and] addressed and dictated the terms of the Settlement Agreement"

is of no consequence because of the Settlement Agreement's comprehensive

integration clause, which provides the following:

> <u>Entire Agreement</u>: This Agreement, including all exhibits and
> attachments, as well as the surviving terms of the EOA and any
> confidentiality agreement, constitutes the entire agreement of the
> Parties and **supersedes and replaces any and all previous
> negotiations, commitments or writings**, specifically including but
> not limited to the Term. **No representation, additional promise or
> agreement not set out in this Agreement has been made as
> consideration for this Agreement and the signing hereof has not
> been induced by any such representation, additional promise or
> agreement.**

(Settlement Agreement ¶ 15 (emphasis added).)  Thus, as also previously

discussed, the final Settlement Agreement superseded all other negotiations and

representations, which includes the Keyes Decision.

Third, and most important, the Parties negotiated the final Settlement

Agreement after receiving the Keyes Decision.  If the Parties had wanted to

include specific language from the Keyes Decision or other documents related to

indemnity in the Dube action into the final Settlement Agreement, they would

have done so.  The Parties are sophisticated corporate entities represented by

capable and experienced counsel.  There is no reason to conclude that the final

Settlement Agreement says anything other than what the Parties intended for it

to say.

In addition, although P Park queries what claims the Order believes the Keyes Decision preserved, if not the claims in this case, P Park is asking the wrong question. The Order did not address an arbitration finding. The Order addressed a Motion to Dismiss.

To the extent P Park's question requires an answer, it is not imperative that there were pending claims at the time the Court rendered its decision or Judge Keyes rendered his. The Keyes Decision was written to guide the Parties not only regarding known disputes, but also regarding "other claims." It is not improbable that Ms. Dube or another artist or vender could file a lawsuit in the future based on information obtained after the Parties signed the Settlement Agreement. If such a cause of action is not barred by an applicable statute of limitations, then indemnity issues must be resolved between the Parties. The Court did not, as P Park asserts, overrule Judge Keyes. If Judge Keyes is "overruled," it is because the Parties, themselves, drafted the final Settlement Agreement as they did.

### b)   Conclusion

For all the reasons previously stated, the Court finds that the Order did not ignore the Keyes Decision. The Keyes Decision was but one step the Parties took

on their way to finalizing the Settlement Agreement.   With the Keyes Decision in hand, the Parties were free to negotiate the final terms of the Settlement Agreement and there is no evidence indicating the Settlement Agreement says anything other than what the Parties intended it to say.

### 5. Whether P Park Should Be Permitted to Amend Its Complaint

In the alternative, P Park seeks leave to amend its complaint to the extent the Order is based on a finding that the averments in the Amended Complaint were inadequate in form or insufficiently specified, at the pleading stage, to establish that the Keyes Decision addressed and interpreted the language of the final Settlement Agreement and the specific claims made in this lawsuit.  (Doc. 83 at 8.)   P Park admits that it is raising the issue of amending the Complaint based on this issue for the first time in this motion.  Defendants did not argue in their Motion to Dismiss that the Amended Complaint was insufficient in its allegations that the Keyes Decision addressed the Settlement Agreement and the claims pleaded in this case.  (Id. n.3.)

### a) Analysis

The Court did not dismiss this case because the averments in the Amended Complaint were inadequate in form or insufficiently specified at the pleading

stage.  The Court dismissed the case because P Park insists that clauses in the

Keyes Decision and/or other predicate documents referred to in the Keyes

Decision survived after the Parties signed the final Settlement Agreement, which

included an unambiguous integration clause.

### b)      Conclusion

Because the Court did not dismiss this case based on insufficient pleading

but based on a thorough analysis of the law and facts, which would not change

upon review of an amended complaint that is based on P Park's continued

insistence that the integration clause of the final Settlement Agreement does not

apply to the Keyes Decision, the Court denies P Park's request to amend its

complaint.

## V.   WHETHER P PARK SHOULD PAY $5000 IN ATTORNEYS' FEES

### A.    The Parties' Arguments

Defendants argue that P Park has "repeatedly flaunted [sic] the local rules"

in connection with this motion by violating Local Rules 7.1(j) by seeking

reconsideration without first obtaining the Court's permission; 7.1(b) by filing

the motion without first contacting the Court to obtain a hearing date; and 7.1(a)

by failing to attempt to meet and confer prior to filing the motion.  (Doc. 92 at 4.)

Defendants assert that because this motion has "vexatiously multiplied the

proceedings," they are entitled to attorneys' fees of $5000 under 28 U.S.C. § 1927. (Id. at 4-5 (citing Friedemann Decl. ¶ 4 & Ex. 3).)

P Park responds that it did not violate Local Rule 7.1(j) because that rule does not apply to Rule 59 motions.  P Park also argues that Rule 59(e) motions are governed by Local Rule 7.1(e) not 7.1(b) and that it contacted chambers and was told to file the motion without a hearing date.

P Park admits that it failed to meet and confer prior to filing the motion but notes that counsel contacted Defendants' counsel one day after filing the motion upon realizing the mistake.  P Park states that since the meet and confer did not result in resolution, Defendants were not prejudiced by the delay.

P Park also notes that Defendants did not file a motion for sanctions under either Rule 11 or pursuant to 28 U.S.C. § 1927.  P Park argues that Defendants cite Jaquette v. Black Hawk Cnty., 710 F.2d 455, 462 (8th Cir. 1983) for the proposition that a Court may sanction a party for vexatious conduct but notes that "the specific contention that a motion was presented for an improper purpose is now covered by Rule 11(b)(1).  Defendants presumably do not involve Rule 11 because they do not comply with the rule."

## B.    Analysis

27

First, although P Park states that Defendants did not file a motion for Rule 11 sanctions or sanctions pursuant to 28 U.S.C. § 1927, Defendants do rely on 28 U.S.C. § 1927 as precedent for relief.  (Doc. 92 at 4.)  The statute provides the following:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.   In addition, although Jaquette is not a Rule 11 case, it is a case addressing courts' "well-acknowledged inherent and statutory powers to levy sanctions against parties and their attorneys for abusive litigation practices."  710 F.2d at 462 (noting that under 28 U.S.C. § 1927, a court may assess costs and fees against an attorney who multiplies the proceedings "unreasonably and vexatiously").  Thus, although Defendants do not mention the word "sanctions" in their brief, it is obvious that they seek payment of their attorneys' fees as a sanction for P Park's filing of what they see as a "meritless" and "vexatious" motion under 28 U.S.C. § 1927.  (Doc. 92 at 4.)

Second, P Park is correct: as discussed above, it was not required to seek permission prior to filing a motion for relief from judgment and it was not required to have a hearing date in the motion because it was instructed to file

28

this motion without a hearing date.  (Doc. 95 (Ivanca Decl.) ¶ 2.)  Therefore,

neither of these bases is a reason to order P Park to pay Defendants' attorneys'

fees.

P Park, however, had a duty to meet and confer prior to filing this motion.

See D. Minn. LR 7.1(a) (requiring parties to meet and confer prior to the filing of

any motion other than a motion for a temporary restraining order).  The Court

has discretion in excusing a party's failure to comply with the requirements of

this local rule.  See First Fin. Sec., Inc. v. Lee, No. 14-CV-1843 (PJS/SER), 2016 WL

881003, at *7 n.10 (D. Minn. Mar. 8, 2016).   P Park's only explanation for failing

to meet and confer is that counsel forgot to do so.  (Doc. 93 ¶ 2.)

Judges in this District take the meet and confer requirement seriously but

do not often sanction parties based on the failure to meet and confer alone.  See

Paisley Park Enterprises, Inc. v. Boxill, No. 17-CV-1212 (WMW/TNL), 2020 WL

3077497, at *1 (D. Minn. June 10, 2020) (denying motion to purge civil contempt

for a variety of reasons including that motion was procedurally improper

because movant did not comply with the Local Rules' meet-and-

confer requirement);  Damgaard v. Avera Health, No. CIV. 13-2192 RHK/JSM,

2015 WL 1608209, at *9 (D. Minn. Apr. 10, 2015) (denying motion to exclude

testimony as a sanction because there was no reason to exclude under Rule

30(c)(2), but admonishing the parties that "[t]hreatening to bring a motion is not

the sort of 'good faith effort to resolve the issues' of a potential motion that is

contemplated by . . . . Local Rule 7.1."). But see First Fin. Sec., 2016 WL 881003, at

*7 n.10 (noting that in light of the defendant's long history of failing to respond

in good faith to the plaintiff's attempts to communicate with him, the judge acted

within his discretion in excusing the plaintiff's failure to comply with the meet-

and-confer requirement and ruling on the motion).

### C.    Conclusion

Based on the above discussion, Defendants' request for attorneys' fees is

denied.  However, P Park is reminded that the meet and confer requirement is

not to be taken lightly or to be ignored in the future.


Based on the files, records, and proceedings herein, **IT IS HEREBY**

**ORDERED**:

Plaintiff's Motion for Relief From Judgment **(Doc. 81)** is **DENIED**.

Date:  October 26, 2022

s/Michael J. Davis
Michael J. Davis
United States District Court

30